[833 NYS2d 313]

ANNETTE J. KISH, as Administrator de bonis non of the Estate of JAMES J. JERGE, Deceased, Appellant, v DAVID H. GRAHAM, M.D., et al., Respondents.

Fourth Department, March 16, 2007

## APPEARANCES OF COUNSEL

*Hamsher & Valentine*, Buffalo (*Richard P. Valentine* of counsel), for appellant.

*Damon & Morey LLP*, Buffalo (*Brian A. Birenbach* of counsel), for respondents.

## OPINION OF THE COURT

GORSKI, J.

Plaintiff commenced this medical malpractice and wrongful death action alleging that, while plaintiff's decedent was a patient at defendant Jones Memorial Hospital, defendants David H. Graham, M.D., Phyllis A. Kephart, M.D. and Mohammed Ayyub, M.D. failed to diagnose and treat decedent's serious condition, i.e., perineal necrotizing fasciitis secondary to a penetrating wound of the scrotum. According to plaintiff, decedent died days later because that condition was not appropriately and immediately treated upon decedent's arrival at defendant hospital.

Following the completion of discovery, defendants' attorney served upon plaintiff's attorney a demand for authorizations in compliance with the federal Health Insurance Portability and Accountability Act of 1996 (HIPAA) (42 USC § 1320d *et seq.*) permitting defendants' attorneys and staff to conduct ex parte interviews with decedent's treating physicians. Plaintiff's attorney refused to provide the authorizations, and defendants thereafter moved for an order compelling plaintiff to comply with defendants' demand for the HIPAA-compliant medical authorizations or, in the alternative, precluding plaintiff from

offering testimony or records of decedent's treating physicians at trial and prohibiting plaintiff's attorney from speaking with decedent's treating physicians prior to trial. Supreme Court granted the motion and directed plaintiff to provide the requested authorizations permitting such interviews on certain conditions. For the reasons that follow, we conclude that the order should be reversed and the motion denied.

In *Cwick v City of Rochester* (54 AD2d 1078 [1976]), this Court was presented with the issue whether the trial court had properly allowed defendants to interview a plaintiff's medical expert with respect to his opinion letter. We concluded that "[n]o authority to 'interview' a medical witness exists under the rules of this department" (*id.* at 1078), and we noted that "there are ample disclosure devices in CPLR article 31 for defendants to obtain whatever information that is properly obtainable in connection with [the expert's opinion letter] that they seek" (*id.* at 1079).

In *Anker v Brodnitz* (98 Misc 2d 148 [1979], *affd* 73 AD2d 589 [1979], *lv dismissed* 51 NY2d 743 [1980]), Supreme Court, Queens County, wrote that "[t]he import of the [*Cwick*] case is that medical discovery should be limited to that obtainable by rule, statute, or express consent and that private interviews would not be allowed even after the exchange of medical records" (*id.* at 151). The court also wrote that "the better rule denies defendant the right to question plaintiff's doctors outside formal discovery procedures" (*id.*). The court further wrote that "[t]o permit private interviews upon the service of a complaint would subject physicians to improper pressures to disclose" (*id.* at 153). The court concluded by observing that "[t]he adequacy of formal discovery procedures, the difficulty of determining what medical information is relevant, and the possibility of doctors or insurers becoming the object of lawsuits for unauthorized disclosure require that there be no private interviews without a patient's express consent" (*id.* at 154). In affirming Supreme Court's order in *Anker*, the Second Department did not write.

Plaintiff contends that the *Cwick/Anker* rule began to be eroded based on the following language in the decision of the Second Department in *Zimmerman v Jamaica Hosp.* (143 AD2d 86 [1988], *lv denied* 73 NY2d 702 [1988]):

> "Moreover, we discern no violation of any recognized
> legal or ethical proscription occasioned by the

testimony of Dr. Rueben, a hospital physician who treated the infant plaintiff prior to the commencement of the action. The trial court properly determined that the rule announced in *Anker* . . . did not bar Dr. Rueben from testifying. That decision precludes an opponent's use of unauthorized private interviews with treating physicians during the pretrial discovery phase of a medical malpractice action absent the patient's express consent or a court order" (*id.* at 88).

Thereafter, a series of cases cited the *Zimmerman* "rule" and seemed to relegate the *Cwick/Anker* rule, which prohibited interviews, to a pre-note of issue rule only. For example, the Second Department wrote in *Levande v Dines* (153 AD2d 671 [1989]) that the trial court precluded the testimony of one of plaintiff wife's treating physicians based on *Anker*,

"which precludes a defendant from conducting an unauthorized, private interview with the plaintiff's treating physician *during the pretrial discovery phase of a medical malpractice action* (*see, Stoller v Moo Young Jun*, 118 AD2d 637). The rationale for this rule is the sanctity of the physician-patient privilege *during discovery* (*Zimmerman* . . . , 143 AD2d 86). We find that the trial court's reliance on the *Anker* case was misplaced. The record contains no indication that the defendant conducted such prohibited interviews. The defendant first contacted [the treating physician in question] after the note of issue had been filed, when the discovery phase of the action clearly had been completed (*see, Zimmerman*[, 143 AD2d 86]). In light of the fact that [the treating physician in question], unlike any of the other doctors who had testified, could have given a medical opinion based on his personal observations of the plaintiff's condition as it existed [when he examined plaintiff], the preclusion of such testimony was prejudicial, and accordingly, we reverse" (emphasis added).

The practice of permitting post-note of issue ex parte interviews was continued and has been used in recent years primarily in medical malpractice litigation to allow post-note of issue interviews. In 1999, this Court wrote in *Luce v State of New York* (266 AD2d 877 [1999]) that the claimant's reliance on *Stoller* (118 AD2d 637 [1986]), *Cwick* and *Anker* "is misplaced.

Those cases hold only that defense counsel may not privately interview *nonparty* treating physicians during the discovery phase of an action" (*Luce*, 266 AD2d at 878). We note, however, that those three cases did not precisely so hold. In *Stoller* (118 AD2d at 637), the Second Department cited *Anker* in determining that "Special Term correctly held that the appellants are not entitled to conduct an unauthorized (i.e., without the plaintiffs' consent) private interview with . . . a nonparty treating physician; they are limited to the discovery devices prescribed in CPLR article 31 . . . ." As previously noted, the *Cwick/Anker* holding is that there is no authority for conducting private interviews with an opposing party's medical expert and that there otherwise are ample disclosure devices available for seeking information that is properly discoverable under CPLR article 31.

The Second Department recently clarified its position on this issue in *Arons v Jutkowitz* (37 AD3d 94 [2006]). The Second Department wrote that it has held that the treating physician's testimony should not be precluded "on the ground that defense counsel had private discussions with him or her *after* the note of issue was filed," and the Court noted that, since the issuance of its decisions in, e.g., *Levande* and *Zimmerman*, "the defense bar has adopted the practice of regularly conducting such post-note of issue ex parte meetings" (*id.* at 97). The Court went on to clarify, however, that

> "we did not declare that defense counsel have a right to such informal, post-note of issue interviews, nor did we require plaintiffs to consent to them. Rather, we merely held, under the circumstances, that the treating physician's unique and highly relevant testimony would not be precluded [citing *Levande* and *Zimmerman*]. 'This is in keeping with the general rule that no party has a proprietary interest in any evidence, and that absent unfair prejudice each party has the right to marshall, and the jury has the right to hear, the testimony that best supports each position' (*Tiborsky v Martorella*, [188 AD2d 795, 797 (1992)]). The federal government's enactment of HIPAA does not alter this precedent despite the practical obstacles it now imposes for defense counsel who seek such private interviews" (*id.* at 97-98).

We agree with the Second Department's analysis of the impact of HIPAA and the Privacy Rule (45 CFR parts 160, 164) on the issue before us:

> "In light of . . . the privacy rule, defense counsel have faced a practical dilemma in attempting to privately speak with plaintiffs' nonparty treating physicians after a note of issue has been filed. 'Specifically, it appears that treating physicians are requiring either written authorizations signed by the plaintiff which comply with HIPAA and which permit oral communications, or a court order authorizing such oral communications which likewise comply with HIPAA' . . . . In other words, since the enactment of HIPAA, defense counsel's attempts to privately speak with nonparty treating physicians have been hindered when plaintiffs will not execute HIPAA-compliant authorizations specifically permitting such communications. Under these circumstances, defendants have moved, as in this case, to compel plaintiffs' execution of such authorizations" (*Arons*, 37 AD3d at 99).

The Second Department went on to write:

> "While courts are empowered to supervise disclosure (*see* CPLR 3104), they must do so in accordance with the Uniform Rules and the provisions of CPLR article 31 which, as previously noted, do not authorize private, ex parte interviews as a disclosure device (*see generally* CPLR 3102 [a]). Rather, compulsion of such unsupervised, private and unrecorded interviews plainly exceeds the ambit of article 31" (*id.* at 100).

In our view, there are compelling reasons for prohibiting such interviews. First, there are no provisions in the law permitting such informal disclosure. Second, formal discovery procedures are in place that would allow an "on the record" discussion with such witnesses in the presence of counsel for the opposing party. Third, we are concerned here with witnesses with privileged medical information, not merely witnesses who will testify to nonprivileged facts. Thus, the established case law that permits equal access to fact witnesses does not apply here. Although a person's relevant medical history is placed at issue when an action is commenced by or on behalf of that person, access to that medical history is not without boundaries (*see Dil-*

*lenbeck v Hess*, 73 NY2d 278, 287 [1989]). Unsupervised interviews with treating physicians in an ex parte setting may result in the intentional or inadvertent revelation of a person's irrelevant medical history. For example, information concerning a sexually transmitted disease may be intentionally or inadvertently revealed during a discussion of the treatment of lung cancer.

Fourth, and perhaps most importantly, we can conceive of no reason for allowing a practice that concededly is not permitted prior to the filing of a note of issue to be permitted after the note of issue is filed. Pursuant to CPLR 3121 (a), a party may serve a notice requiring another party to provide medical authorizations for the release of relevant medical information and, pursuant to CPLR 3106 (b), a party may seek to depose nonparty treating physicians prior to the filing of the note of issue. In addition, 22 NYCRR 202.21 (d) provides a vehicle for seeking pretrial disclosure after the note of issue has been filed, provided that the party seeking the disclosure can demonstrate "unusual or unanticipated circumstances" (*id.*). There is no statutory or regulatory authority in New York that would permit ex parte interviews with a plaintiff's treating physicians and, to the extent that prior cases of this Court suggest otherwise, they are no longer to be followed. As the Second Department succinctly wrote, "compulsion of such unsupervised, private and unrecorded interviews plainly exceeds the ambit of [CPLR] article 31" (*Arons*, 37 AD3d at 100).

Finally, we note that our decision does not affect the ability of the parties to gather information relative to the issues raised in a personal injury, medical malpractice or wrongful death action. The presence of counsel for the opposing party at a discovery proceeding will serve to keep the inquiry into medical treatment focused only on that medical information that is relevant to the controversy at bar.

Accordingly, we conclude that the order should be reversed and the motion denied.

PINE, J. (dissenting). We respectfully dissent. The complaint in this medical malpractice and wrongful death action alleges that defendants failed to diagnose and treat decedent's life-threatening condition of perineal necrotizing fasciitis. Following the completion of discovery, defendants' attorney served a demand for authorizations on plaintiff's attorney, demanding that plaintiff "provide to [defendants' attorney], prior to the fil-

ing of the note of issue, . . . authorizations [in compliance with the federal Health Insurance Portability and Accountability Act of 1996 (HIPAA) (42 USC § 1320d *et seq.*)] which permit . . . attorneys and staff [of the law firm of defendants' attorney] to speak with the physicians [who] treated [decedent]." The authorizations were sought to permit defendants' attorney to speak to decedent's treating physicians after the filing of the note of issue. Plaintiff's attorney refused to provide the authorizations on the ground that "[t]here is no authority to support this demand." A second attempt by defendants' attorney to obtain a voluntary authorization also was unsuccessful.

Defendants moved for an order compelling plaintiff to comply with defendants' demand for the medical authorizations or, in the alternative, precluding plaintiff from offering testimony or records of decedent's treating physicians at trial and prohibiting plaintiff's attorney from speaking with decedent's treating physicians prior to trial. We cannot agree with the majority that Supreme Court erred in granting defendants' motion and, for the reasons that follow, we conclude that the order requiring plaintiff to execute the requested HIPAA-compliant medical authorizations on certain conditions should be affirmed.

## New York Law, Pre-HIPAA

"The physician-patient privilege, presently contained in CPLR 4504, is entirely a creature of statute. At common law, confidential communications between physicians and patients received no protection against disclosure in a legal proceeding" (*Dillenbeck v Hess*, 73 NY2d 278, 283 [1989]; *see Koump v Smith*, 25 NY2d 287, 293 [1969]). "New York State became the first jurisdiction to depart from the common-law rule when it adopted the physician-patient privilege by statute in 1828" (*Dillenbeck*, 73 NY2d at 284; *see Koump*, 25 NY2d at 293).

> "In its current form, the privilege prohibits disclosure of any information acquired by a physician 'in attending a patient in a professional capacity, and which was necessary to enable him [or her] to act in that capacity' (CPLR 4504 [a]). The privilege applies not only to information communicated orally by the patient, but also to 'information obtained from observation of the patient's appearance and symptoms, unless the facts observed would be obvious to lay[persons]' " (*Dillenbeck*, 73 NY2d at 284,

quoting Fisch, New York Evidence § 544, at 361 [2d ed]).

In 1969, the Court of Appeals held that, "by bringing or defending a personal injury action in which mental or physical condition is affirmatively put in issue, a party *waives* the privilege" (*Koump*, 25 NY2d at 294). The Court wrote:

> "As a practical matter, a plaintiff or a defendant, who affirmatively asserts a mental or physical condition, must eventually waive the privilege to prove his [or her] case or . . . defense. To uphold the privilege would allow a party to use it as a sword rather than a shield. A party should not be permitted to assert a mental or physical condition in seeking damages or in seeking to absolve himself [or herself] from liability and at the same time assert the privilege in order to prevent the other party from ascertaining the truth of the claim and the nature and extent of the injury or condition" (*id.*).

Seven years after *Koump* was decided, this Court was called upon to address the propriety of a motion to "interview" a medical expert with respect to his opinion letter during the discovery phase of litigation (*Cwick v City of Rochester*, 54 AD2d 1078 [1976]). We held that there was no authority for such an interview under the rules of the Fourth Department or under CPLR article 31 (*id.* at 1078). *Cwick* was distinguished in *Anker v Brodnitz* (98 Misc 2d 148 [1979], *affd on op of Boyers, J.*, 73 AD2d 589 [1979], *lv dismissed* 51 NY2d 743 [1980]), where the issue presented was whether the service of a complaint in a medical malpractice action effected a waiver of the physician-patient privilege "to the extent that defendants can privately interview a nonparty treating physician without court order or the patient's express consent" (*id.* at 149). The private interviews were sought "prior to the formal exchange of medical records" (*id.* at 154). Supreme Court wrote that "[t]he import of [*Cwick*] [was] that medical *discovery* should be limited to that obtainable by rule, statute, or express consent and that private interviews would not be allowed even after the exchange of medical records" (*id.* at 151 [emphasis added]). Thus, the court concluded that "the better rule denies defendant the right to question plaintiff's doctors *outside formal discovery procedures*" (*id.* [emphasis added]). Private interviews with plaintiff's doctors "upon the service of a complaint" were precluded (*id.* at 153).

In *Zimmerman v Jamaica Hosp.* (143 AD2d 86 [1988], *lv denied* 73 NY2d 702 [1988]) and *Levande v Dines* (153 AD2d 671 [1989]), the Second Department limited the holding in *Anker* in stating that *Anker* precluded "an opponent's use of unauthorized private interviews with treating physicians during the pretrial discovery phase of a medical malpractice action absent the patient's express consent or a court order" (*Zimmerman*, 143 AD2d at 88; *see Levande*, 153 AD2d at 672). Relying on *Zimmerman* and *Levande*, this Court and the two remaining Departments have held that attorneys for defendants may conduct ex parte post-note of issue interviews of a plaintiff's treating physician (*see Luce v State of New York*, 266 AD2d 877 [4th Dept 1999]; *Fraylich v Maimonides Hosp.*, 251 AD2d 251 [1st Dept 1998]; *Tiborsky v Martorella*, 188 AD2d 795 [3d Dept 1992]). The rationale for permitting such interviews is that they are conducted in preparation for trial, and "fairness militate[s] in favor of equal access" to evidence (Balson-Cohen, Outside Counsel, *Trial by Ambush and the Treating Physician*, NYLJ, Aug. 17, 2006, at 4, col 4; *see also Conning the IADC Newsletters*, 71 Def Couns J 199, 208 [Apr. 2004]). As a general rule, "no party has a proprietary interest in any evidence" (*Tiborsky*, 188 AD2d at 797). We conclude that the rationale and rule supporting those cases is still valid.

> " '[A] rule disallowing ex parte communications with a plaintiff's treating physicians attempts to ensure the confidentiality of the physician-patient relationship at the expense of the defendant. Allowing a plaintiff to have free access to potentially important facts and/or expert witnesses, while requiring the defendant to use more expensive, inconvenient, and burdensome formal discovery methods tilts the litigation playing field in favor of the plaintiff' " (*Conning the IADC Newsletters*, 71 Def Couns J at 210, quoting Jennings, *The Physician-Patient Relationship: The Permissibility of Ex Parte Communications between Plaintiff's Treating Physicians and Defense Counsel*, 59 Mo L Rev 441, 475 [1994]).

The majority refers to such interviews as disclosure, which would by definition restrict their availability to statutory discovery devices under CPLR article 31. We, however, conclude that, while discovery devices are available before the filing of a note of issue, defense attorneys should not be precluded from

interviewing potential trial witnesses in preparation for trial after the note of issue has been filed. Plaintiffs should not be allowed free access to evidence while at the same time forcing defendants to rely on the "more expensive, inconvenient, and burdensome formal discovery methods" (*id.*). To do so gives plaintiffs an unfair advantage over defendants.

We recognize that the Second Department no longer agrees with the holdings of *Zimmerman* and *Levande* (*see Arons v Jutkowitz*, 37 AD3d 94 [2006]). In *Arons*, the Court stated that its decision in *Zimmerman* "did not declare that defense counsel have a right to such informal, post-note of issue interviews" (*id.* at 97), nor did the Court in its prior cases "require plaintiffs to consent to them" (*id.*). The Court refused to compel plaintiffs to authorize the "unsupervised, private and unrecorded interviews" between defense counsel and a plaintiff's treating physicians, concluding that such interviews were not authorized under the CPLR article 31 discovery procedures (*id.* at 100). *Zimmerman* and *Levande*, however, strongly implied that private interviews of a plaintiff's treating physicians on behalf of a defendant *after discovery had been completed* were permissible (*see Zimmerman*, 143 AD2d at 88; *see also Levande*, 153 AD2d at 672).

While the majority agrees with *Arons*, we do not. Both the Second Department in *Arons* and the majority in this case conclude that interviews of physician witnesses always constitute discovery. We conclude that post-note of issue interviews of fact witnesses, whether physicians or lay witnesses, constitute trial preparation rather than discovery. We agree with the Second Department and the majority in this case that such interviews are not covered under the CPLR article 31 discovery provisions, but we note that CPLR article 31 does not authorize trial preparation interviews with any nonparty witnesses. Thus, the fact that CPLR article 31 does not authorize such interviews is irrelevant to the issue here, i.e., whether interviews of nonparty fact witnesses are permissible in preparation for trial. It is beyond question that a defense attorney may interview an eyewitness to a motor vehicle collision in preparation for trial without resorting to CPLR article 31 discovery devices. While physicians are, indeed, different because of their obligation to protect the confidentiality of their communications with patients, we perceive no basis to treat the physician witnesses differently from other fact witnesses once the plaintiff waives the physician-patient privilege. Indeed, the Court of Appeals in

*Koump* specifically stated that a party should not be permitted to assert the privilege in order to prevent the other party's access to evidence (*see Koump*, 25 NY2d at 294).

Having concluded that there is no legal impediment to such trial preparation interviews, we respond to the majority's "compelling" reasons for prohibiting such interviews with what we perceive to be even more compelling reasons for permitting them. First, as noted above, the absence of any formal rule permitting such interviews is irrelevant; there are no formal rules permitting trial preparation interviews of any nonparty witnesses. In response to the majority's second and fourth reasons for prohibiting such interviews, we note that formal discovery techniques, while certainly available to attorneys, are not only more expensive, inconvenient, and burdensome than informal ones, but they also would have the effect of significantly interfering with the practice of medicine. To require a physician to submit to depositions or interrogatories rather than merely being asked a question by a defense attorney could significantly impact that physician's availability to practice medicine. Instead of communicating with an attorney during a 10-minute telephone call, a physician could be required to attend a four-hour deposition or to provide a time-consuming response to detailed and lengthy interrogatories. Inasmuch as the plaintiff has waived the physician-patient privilege, we see no need to require such burdensome procedures for physician witnesses when they are not required for other witnesses.

The majority expresses deep concern over the possibility that a physician may reveal information beyond the scope of the authorization. The authorization, however, can be limited to the information relevant to the mental or physical condition at issue, and we see no reason to assume that physicians will not adhere to those limits. Furthermore, we note that an authorization permits, but does not require, a physician to provide the requested information. Finally, the authorization, even if ordered by a court, remains voluntary in the sense that the plaintiff has voluntarily commenced the action in which her decedent's medical condition is at issue and has waived the physician-patient privilege. While the action is pending, the plaintiff cannot use the physician-patient privilege as a sword and a shield.

We conclude that the law permitting ex parte post-note of issue interviews by attorneys for defendants of a plaintiff's treating physicians is based on the sound and equitable premise that

"fairness militate[s] in favor of equal access" to evidence (*Trial by Ambush and the Treating Physician*, NYLJ, Aug. 17, 2006, at 4, col 4; *see also Conning the IADC Newsletters*, 71 Def Couns J at 208).

## The Relevant Provisions of HIPAA

We now must determine whether the enactment of HIPAA changed New York law on this issue. The enactment of HIPAA in 1996 was spawned by the economic efficiency of using electronic technology in transmitting medical records and the concomitant need to formulate national standards to protect the confidentiality of those records (*see* Silber and Rabar, *Interviewing Treating Physicians: Hype Over HIPAA*, NYLJ, July 13, 2005, at 3, col 1). That legislation took effect in 2003 and was "intended to provide a baseline of health information privacy protections" (Wirtes, Lamberth and Gomez, *An Important Consequence of HIPAA: No More Ex Parte Communications Between Defense Attorneys and Plaintiffs' Treating Physicians*, 27 Am J Trial Advoc 1, 4 [Summer 2003]). Thereafter, the Department of Health and Human Services (DHHS) promulgated regulations delineating what information would constitute protected health information (PHI) (*see* 45 CFR 160.103) and the standards for disclosing PHI in judicial or administrative proceedings (*see* 45 CFR 164.512 [e]; *see also* Silber and Rabar, at 3, col 1; Wirtes, Lamberth and Gomez, 27 Am J Trial Advoc at 5-6). PHI constitutes " 'any information, whether oral or recorded in any form or medium,' that is created by a health care provider and relates to the past, present, or future physical or mental health or condition of an individual" (Moore and Gaier, Medical Malpractice, *Interviews With Treating Physicians,* NYLJ, July 6, 2004, at 3, col 1, quoting 45 CFR 160.103).

The disclosure of PHI in judicial or administrative proceedings is permissible

> "[i]n response to an order of a court or administrative tribunal, provided that the covered entity discloses only the protected health information expressly authorized by such order; or . . .
>
> "[i]n response to a subpoena, discovery request, or other lawful process, that is not accompanied by an order of a court or administrative tribunal" (45 CFR 164.512 [e] [1] [i], [ii]).

In addition, it is axiomatic that disclosure is also permitted

when the patient has signed an authorization permitting the disclosure (*see* 45 CFR 164.508).

The regulations explicitly state that HIPAA preempts any state law unless that law is more restrictive insofar as it "relates to the privacy of individually identifiable health information" (45 CFR 160.203 [b]). "Since the law of New York provides virtually no protections against a treating physician's oral communication of a plaintiff-patient's health information once a note of issue is filed, its preemption by [HIPAA] seems clear" (Moore and Gaier, at 3, col 1).

## Effect of HIPAA on Ex Parte Post-Note of Issue Interviews

HIPAA and the corresponding regulations are silent on the issue of ex parte interviews between attorneys for defendants and plaintiffs' treating physicians, and the Seventh Circuit has explicitly stated that HIPAA does not create a federal physician-patient privilege (*see Northwestern Mem. Hosp. v Ashcroft*, 362 F3d 923, 925-926 [2004]). Thus, there is little federal guidance on the impact of HIPAA on ex parte post-note of issue interviews. DHHS, in discussing 45 CFR 164.512, wrote that the HIPAA provisions were "not intended to disrupt current practice whereby an individual who is a party to a proceeding and has put his or her medical condition at issue will not prevail without consenting to the production of his or her protected health information" (65 Fed Reg 82462-01, at 82530; *see* Balson-Cohen, at 4, col 4; *Conning the IADC Newsletters*, 71 Def Couns J at 211).

Courts in other states that have permitted ex parte interviews of a plaintiff's treating physicians have concluded that HIPAA had no effect on the substantive law of those respective states. For example, in concluding that HIPAA did not preempt state law permitting ex parte post-note of issue interviews of a plaintiff's treating physicians, the Superior Court of New Jersey wrote: "Nowhere in HIPAA does the issue of [ex parte] interviews with treating physicians . . . come into view. The court is aware of no intent by Congress to displace any specific state court rule, statute or case law . . . on ex parte interviews" (*Smith v American Home Prods. Corp. Wyeth-Ayerst Pharm.*, 372 NJ Super 105, 128, 855 A2d 608, 622 [2003]; *see also Bayne v Provost*, 359 F Supp 2d 234, 240 [2005]).

Because New Jersey had permitted ex parte interviews of plaintiffs' treating physicians before the enactment of HIPAA (*see generally Stempler v Speidell*, 100 NJ 368, 495 A2d 857

[1985]), the New Jersey Superior Court concluded that such interviews continue to be permissible "without compromising HIPAA" (*In re Diet Drug Litig.*, 384 NJ Super 546, 564, 895 A2d 493, 504 [2005]; *see Smith*, 372 NJ Super at 134, 855 A2d at 626).

In *Belote v Strange* (2005 WL 2758007, 2005 Mich App LEXIS 2642, *lv denied* 475 Mich 856, 713 NW2d 769 [2006]), the Michigan Court of Appeals discussed the effect of HIPAA on its state statute permitting ex parte interviews. The court found that HIPAA did not preclude such interviews but, rather, imposed protections with respect to such interviews (*see* 2005 WL 2758007 at *5, 2005 Mich App LEXIS 2642 at *15-16). The United States District Court in Maryland ruled similarly, concluding that Maryland law permits ex parte interviews and that HIPAA merely regulates the procedures for conducting such interviews (*see Law v Zuckerman*, 307 F Supp 2d 705, 711 [2004]).

Across New York, numerous cases have arisen in trial courts raising the issue concerning the impact of HIPAA on ex parte post-note of issue interviews between attorneys for defendants and plaintiffs' treating physicians. Most of the courts addressing the issue have held that HIPAA has not had a substantive impact on the law of New York that permits attorneys for defendants to conduct such interviews and have ordered plaintiffs to provide attorneys for defendants with HIPAA-compliant authorizations (*see e.g. Constantino v Cooper*, 12 Misc 3d 1174[A], 2006 NY Slip Op 51215[U] [Sup Ct, Nassau County 2006]; *Hitchcock v Suddaby*, 7 Misc 3d 1026[A], 2005 NY Slip Op 50762[U] [Sup Ct, Erie County 2005]; *Smith v Rafalin*, 6 Misc 3d 1041[A], 2005 NY Slip Op 50385[U] [Sup Ct, NY County 2005]; *Steele v Clifton Springs Hosp. & Clinic*, 6 Misc 3d 953 [Sup Ct, Monroe County 2005]). Those courts continued to follow the reasoning of *Anker, Zimmerman, Levande, Tiborsky, Fraylich* and *Luce* by concluding that the interviews are permissible "in order to foster the truth seeking function of a trial and in order to ensure fundamental fairness and a level playing field" (*Steele*, 6 Misc 3d at 957).

Two other courts have recognized that ex parte post-note of issue interviews were permitted under New York law and that HIPAA neither created substantive rights or remedies for plaintiffs nor altered the substantive law permitting those interviews (*see Holzle v Healthcare Servs. Group, Inc.*, 7 Misc 3d 1027[A], 2005 NY Slip Op 50770[U] [Sup Ct, Niagara County

2005]; *Valli v Viviani*, 7 Misc 3d 1002[A], 2005 NY Slip Op 50409[U] [Sup Ct, Suffolk County 2005]). Those courts, however, held that there was no need for judicial involvement inasmuch as HIPAA provided other means to obtain the same information and courts should decline to become involved in post-note of issue trial preparation (*see Holzle*, 2005 NY Slip Op 50770[U] at *8-9; *Valli*, 2005 NY Slip Op 50409[U] at *4). Finally, at least two courts have refused to order plaintiffs to provide the authorizations based on the general view that the CPLR does not authorize such "discovery" (*see Ottinger v Mausner*, 11 Misc 3d 1070[A], 2006 NY Slip Op 50460[U], *3 [Sup Ct, Nassau County 2006]; *Browne v Horbar*, 6 Misc 3d 780, 788 [Sup Ct, NY County 2004]). Those two courts questioned the rationale underlying the decisions in *Anker, Zimmerman, Levande, Tiborsky, Fraylich* and *Luce* holdings (*see Ottinger*, 2006 NY Slip Op 50460[U] at *2; *Browne*, 6 Misc 3d at 785-786).

## Conclusion

We conclude, as have many Supreme Court justices in this state, that HIPAA did not change the substantive law of New York with respect to ex parte post-note of issue interviews between attorneys for defendants and plaintiffs' treating physicians. A party who brings or defends a personal injury action in which the party's mental or physical condition is affirmatively placed in issue is deemed to have waived the physician-patient privilege (*see Koump*, 25 NY2d at 294). The policy reasons for permitting such interviews, as articulated in *Luce, Fraylich, Tiborsky, Levande* and *Zimmerman*, are as valid today as they were when those cases were decided. Implicit in the waiver of the privilege, as established by *Koump*, is the obligation to permit access to relevant evidence. In light of HIPAA, that obligation now requires plaintiffs to provide attorneys for defendants with authorizations to conduct ex parte post-note of issue interviews of plaintiffs' treating physicians.

Accordingly, we conclude that the order should be affirmed.

SCUDDER, P.J., and HURLBUTT, J., concur with GORSKI, J.; PINE and SMITH, JJ., dissent and vote to affirm in a separate opinion by PINE, J.

It is hereby ordered that the order so appealed from be and the same hereby is reversed on the law without costs and the motion is denied.