[882 NYS2d 130]

TERESA PORCELLI et al., Respondents, v NORTHERN WESTCHES-
TER HOSPITAL CENTER et al., Defendants, and MELISSA TSAI,
Appellant.

Second Department, June 9, 2009

## APPEARANCES OF COUNSEL

*Vouté, Lohrfink, Magro & Collins, LLP*, White Plains (*Laura K. Silverstein* of counsel), for appellant.

*Bailly & McMillan, LLP*, White Plains (*Katharine G. Hall* of counsel), for respondents.

### OPINION OF THE COURT

McCarthy, J.

On this appeal, we are presented with the principal question of whether a plaintiff may include, directly on the authorizations he or she provides to nonparty treating physicians in compliance with the Health Insurance Portability and Accountability Act of 1996 (42 USC § 1320d *et seq.*; hereinafter HIPAA), a statement that the purpose of an informal, ex parte interview sought by defense counsel is solely to assist defense counsel at trial and that participation is voluntary. We find that, consistent with *Arons v Jutkowitz* (9 NY3d 393 [2007]), such information may be included directly on the HIPAA-compliant authorization form.

The plaintiff Teresa Porcelli (hereinafter the plaintiff), individually and as the mother and natural guardian of the infant plaintiff, commenced this action, inter alia, to recover damages for medical malpractice and alleged negligence in the care and treatment of her daughter, at or near the time of her birth on November 14, 2000. On her own behalf, the plaintiff also asserts a derivative cause of action. The plaintiff alleged that as a result of the negligent performance of perinatal intubation and suctioning of the infant plaintiff performed by the defendants Northern Westchester Hospital Center (hereinafter the hospital), Drs. Stacey Allison Madoff, Ephraim Brian Russell, and Melissa Tsai (hereinafter collectively the defendants), the infant plaintiff sustained a perforation of her pharynx, which caused her to develop pneumonia and infections, required her to undergo surgery to repair the perforation, and subsequently caused her to develop, among other things, asthma, and conditions requiring an extended course of antibiotics.

In the course of discovery, it was revealed that the infant plaintiff had received and continued to receive care and treatment from Drs. Emily Puntillo and John Costa at the Mt. Kisco

Medical Group (hereinafter Mt. Kisco), and had undergone surgery performed by Dr. Charles Stolar. After jury selection in the matter had been scheduled, in a letter dated February 28, 2008, counsel for Tsai requested HIPAA-compliant authorizations from the plaintiff for the release of the infant plaintiff's updated records of Mt. Kisco and Stolar, and for the records of Drs. Puntillo and Costa. Tsai's counsel also requested that the plaintiff authorize ex parte interviews with Drs. Puntillo, Costa, and Stolar (hereinafter collectively the treating physicians) in accordance with *Arons v Jutkowitz* (9 NY3d 393 [2007]). By letter dated March 14, 2008, Tsai's counsel indicated he was still awaiting an authorization from the plaintiff allowing him to speak with the treating physicians. On March 31, 2008, after the plaintiff failed to provide the requested authorizations allowing Tsai to speak with the treating physicians, Tsai moved, inter alia, to compel the plaintiffs to comply with her demand for those HIPAA-compliant authorizations. The hospital submitted an affirmation of its counsel in support of the motion.

In opposition, the plaintiff, through the affirmation of her counsel, conceded that Tsai was entitled, pursuant to *Arons*, to interview the treating physicians. However, she, in effect, made a cross application to include certain specified language in the applications, contending that, pursuant to *Arons*, the authorizations provided to each of the treating physicians should state:

> "The purpose of the requested interview with the physician is solely to assist defense counsel at trial.
>
> "The physician is not obligated to speak with defense counsel prior to trial. The interview is voluntary."

Consequently, the plaintiff asserted that she would include such language directly on the authorizations. Appended as exhibits to the affirmation were authorizations for the requested ex parte interviews, each of which contained the following handwritten language, which was highlighted in yellow: "The purpose of the requested interview with the physician is solely to assist defense counsel at trial. The physician is not obligated to speak with defense counsel prior to trial. The interview is voluntary."

In reply, Tsai submitted an affirmation of her counsel contending that *Arons* was silent on whether such language was required or even authorized to be placed directly on the HIPAA-compliant authorizations. Quoting *Arons*, Tsai's counsel noted

that the onus is on defense counsel to provide the admonitions expressed in the challenged language: "an attorney who approaches a nonparty treating physician (or other health care professional) must simply reveal the client's identity and interest, and make clear that any discussion with counsel is entirely voluntary and limited in scope to the particular medical condition at issue in the litigation." (*Id.* at 410.) Tsai's counsel further averred that inclusion of the challenged language in the authorizations themselves would chill any cooperation and imply that the plaintiff preferred noncooperation, which he contended was especially true here, since the plaintiff highlighted the disputed language with yellow marker, thereby conveying an "unmistakable message" that the plaintiff preferred noncooperation.

In an order entered June 5, 2008, the court granted that branch of Tsai's motion which was to compel the plaintiffs to provide authorizations, and directed the plaintiffs to provide the HIPAA-compliant authorizations, and, in effect, granted what was, in effect, a cross application by the plaintiffs and directed that such authorizations "shall contain" the challenged language. In its analysis, the court noted that in one of the orders reviewed and affirmed in *Arons*, the Supreme Court had ordered the inclusion of similar language directly on the authorizations. Thereafter, the court denied Tsai's motion for leave to reargue. Tsai appeals from the order entered June 5, 2008.

In *Arons v Jutkowitz* (9 NY3d 393 [2007]), which involved three separate medical malpractice actions, the Court of Appeals held that there was no general prohibition against defense counsel conducting an ex parte interview with a nonparty physician, even after a note of issue had been filed, provided counsel complied with the procedural prerequisites set forth in the HIPAA privacy rule (45 CFR parts 160, 164), and with limitations set forth in analogous case law concerning interviews with, for example, employees of corporations (*see e.g. Muriel Siebert & Co., Inc. v Intuit Inc.*, 8 NY3d 506 [2007]; *Niesig v Team I*, 76 NY2d 363 [1990]). The HIPAA privacy rule forbids an organization subject to its requirements ("covered entity" [45 CFR 160.103, 164.104 (a); 164.502 (a)]) from using or disclosing an individual's health information ("protected health information" [45 CFR 160.103]), except as mandated or permitted by its provisions.

In *Arons v Jutkowitz*, the first of the three medical malpractice actions, the Supreme Court granted a motion to compel the

plaintiff to provide HIPAA-compliant authorizations permitting a defendant doctor to conduct a post-note of issue interview with the decedent's treating physician, with the following conditions:

> " 'the authorization[s] must, on [their] face state in **BOLD** letters that the purpose of the interview is to assist the defendants in defense of a lawsuit and it is not at the request of the plaintiff. The authorization[s] must contain the name and address of the person to whom the health care provider may give an interview if he or she wishes and must identify the persons or entities the interviewer is representing and must conform in all respects to 45 C.F.R. § 164.508 (c) [the relevant HIPAA regulations]. The authorizations may **not** be combined with a subpoena and there must be a separate authorization for each interview.

> " 'Within 72 hours after the interview, the defendant must provide the plaintiff with any and all written statements, materials or notations and any document obtained from the interviewed health care provider, as well as copies of any memoranda, notes, audio or video recordings of any oral statements made by the health care provider. The defendant's counsel need not disclose their conclusions, impressions or analysis of any of the statements' " (*Arons v Jutkowitz*, 9 NY3d at 403, quoting *Arons v Jutkowitz*, 2005 NY Slip Op 30130[U], *3 [Sup Ct, Richmond County 2005]).

On appeal, this Court reversed, holding that the defendants were entitled only to the disclosure provided for in CPLR article 31 and the Uniform Rules for the New York State Trial Courts, which neither mentioned ex parte interviews nor mandated that a plaintiff execute authorizations permitting them (*Arons v Jutkowitz*, 37 AD3d 94 [2006]).

In the second action, *Webb v New York Methodist Hosp.*, the Supreme Court granted a motion to compel the plaintiff to provide HIPAA-compliant authorizations permitting the defendant physician and defendant hospital to conduct post-note of issue ex parte interviews with two of the plaintiff's treating physicians. The Supreme Court granted the motion with the condition, inter alia, that "defense counsel . . . hand over to his adversary copies of all written statements and notations

obtained from the physicians during the private interviews, as well as any audio or video recordings or transcripts, and interview memoranda or notes (excluding the attorneys' observations, impressions or analyses)" (*Arons*, 9 NY3d at 404-405). This Court reversed pursuant to our determination in *Arons* (37 AD3d 94 [2006]; *see Webb v New York Methodist Hosp.*, 35 AD3d 457 [2006]).

In the third action, *Kish v Graham*, the Supreme Court granted the defendant physicians' motion to compel the plaintiff to provide HIPAA-compliant authorizations permitting defense counsel to conduct an interview with the decedent's treating physicians, subject to the following pertinent conditions:

> "(c) The authorization shall be accompanied by a cover letter from defense counsel to the subsequent treating physician stating:
>
> "(1) While the [accompanying] subpoena requires such physician's testimony at trial, the physician is not obligated to speak with defense counsel prior to trial;
>
> "(2) The purpose of the requested interview with the physician is solely to assist defense counsel at trial;
>
> "(3) If the physician grants the requested interview with defense counsel, a copy of such physician's records, if any, previously provided to defense counsel will be available to assist the physician during the interview;
>
> "(4) The physician is not required to provide defense counsel with any written material or records prior to trial; and
>
> "(d) Provided that defense counsel complies with the conditions prescribed in this Order, no notice of the date or time of the interview need be given to plaintiff's counsel" (*Arons v Jutkowitz*, 9 NY3d at 405-406 [internal quotation marks omitted]).

Relying on this Court's holding in *Arons* (37 AD3d 94 [2006]), the Appellate Division, Fourth Department, reversed, with two Justices dissenting (*see Kish v Graham*, 40 AD3d 118 [2007]).

The Court of Appeals explained that in the context of litigation against a corporation, it had previously held that a current employee of a corporation whose acts or omissions relating to

the matter under inquiry did not bind the corporation, or whose acts or omissions could not be imputed to the corporation, or who was not implementing the advice of counsel, was not considered a "party" to the litigation under Code of Professional Responsibility DR 7-104 (a) (1) (22 NYCRR 1200.35 [a] [1]) and, accordingly, a party in opposition to the subject corporation could seek an ex parte interview with such employee (see Arons, 9 NY3d at 407, citing Niesig v Team I, 76 NY2d at 373-374). The Court of Appeals explained that it implicitly did not require counsel to set forth their identity and interest to interviewees, but "assumed" attorneys would do so and would otherwise "comport themselves ethically" (id. at 407, citing Niesig v Team I, 76 NY2d at 376). In Muriel Siebert & Co., Inc. v Intuit Inc. (8 NY3d 506 [2007]), the Court of Appeals held that, for the reasons set forth in Niesig, counsel could conduct an ex parte interview of a former corporate executive, as long as steps were taken to ensure that privileged or confidential information was not disclosed (see Arons v Jutkowitz, 9 NY3d at 408). Noting that in a personal injury action, a plaintiff waives the physician-patient privilege, the Court of Appeals saw "no reason . . . a nonparty treating physician should be less available for an off-the-record interview than the corporate employees in Niesig or the former corporate executive in Siebert" (id. at 409).

The Court of Appeals rejected the plaintiffs' contention that defendants could only seek such interviews in accord with article 31 of the CPLR, noting that "[a]ttorneys have always sought to talk with nonparties who are potential witnesses as part of their trial preparation" (id.). To prevent overreaching during an interview with a nonparty treating physician, which was especially at risk of occurring in an informal setting without the presence of opposing counsel, the Court of Appeals again " 'assume[d] that attorneys would make their identity and interest known to interviewees and comport themselves ethically' " (id. at 410, quoting Niesig v Team I, 76 NY2d at 376). The Court of Appeals summed up as follows: "an attorney who approaches a nonparty treating physician (or other health care professional) must simply reveal the client's identity and interest, and make clear that any discussion with counsel is entirely voluntary and limited in scope to the particular medical condition at issue in the litigation" (id.).

Directly addressing the impact of HIPAA on a defendant's attempt to conduct an ex parte interview with a nonparty treating

physician, the Court of Appeals explained that "a covered entity [as defined by HIPAA], such as a physician, who releases a patient's protected health information in a way permitted by the [HIPAA] Privacy Rule does not violate HIPAA; however, neither the statute nor the Rule requires the physician to release this information" (*id.* at 413). In discussing the requirements of the HIPAA privacy rule, the Court of Appeals noted that, generally, a covered entity may disclose to third parties protected health information with a valid authorization that

> "must contain specific 'core elements and requirements,' including a 'specific and meaningful' description of the protected health information to be used or disclosed, the identity of those persons or classes of persons authorized to make and receive the requested use or disclosure, an expiration date or event, the individual's signature, and a statement notifying the signatory of the right to revoke the authorization in writing" (*id.* at 414, citing 45 CFR 164.508 [c] [1], [2]).

Synthesizing its rationales in *Niesig* and *Siebert* with the purpose and requirements of HIPAA and the HIPAA privacy rule, the Court of Appeals noted that the HIPAA privacy rule

> "does not prevent this informal discovery from going forward[;] it merely superimposes procedural prerequisites. As a practical matter, this means that the attorney who wishes to contact an adverse party's treating physician must first obtain a valid HIPAA authorization or a court or administrative order; or must issue a subpoena, discovery request or other lawful process with satisfactory assurances relating to either notification or a qualified protective order" (*id.* at 415).

Turning to the three cases before it, the *Arons* Court stated that it "was entirely proper" for the trial courts to grant the defendants' motions to compel the plaintiffs to provide HIPAA-compliant authorizations permitting defense counsel to speak with the plaintiffs' treating physicians on the ground that the plaintiffs waived any physician-patient privilege when they brought suit (*id.* at 415). The Court of Appeals noted that nonparty treating physicians were free to decline to participate in the interview, as the authorizations only ensured compliance with HIPAA and the HIPAA privacy rule (*id.* at 416). The Court of Appeals further noted that the orders in *Arons* and *Webb* er-

roneously required defense counsel to turn over to the plaintiffs copies of all written statements and notations from the treating physicians, as well as any recordings, transcripts, interview memoranda, or notes, as such conditions were not required by HIPAA and were inconsistent with *Niesig* and *Siebert* (*id.*). Accordingly, the Court reversed the orders of the Appellate Division in all three of the cases before it, and granted the defendants' motion to compel the plaintiffs to provide the HIPAA-compliant authorizations "in accordance with this opinion" (*id.*).

Notably, although the Court of Appeals expressed some preference that defense counsel disclose to the treating physician "the client's identity and interest, and make clear that any discussion with counsel is entirely voluntary and limited in scope to the particular medical condition at issue in the litigation" (*id.* at 410), it did not explicitly strike down the conditions imposed by the Supreme Court in *Arons*, requiring that the physician be informed by the plaintiff directly on the authorization itself, in boldface type, that "the purpose of the interview is to assist the defendants in defense of a lawsuit and it is not at the request of the plaintiff" (*id.* at 403). Nor did it state an express preference for the condition in *Kish v Graham*, which required the plaintiff's HIPAA-compliant authorization to be accompanied by a cover letter from defense counsel informing the treating physician, inter alia, that "the physician is not obligated to speak with defense counsel prior to trial" and "[t]he purpose of the requested interview with the physician is solely to assist defense counsel at trial" (*id.* at 406). Indeed, in a footnote, the Court of Appeals stated,

> "[w]e take no issue with those portions of the *Arons* and *Kish* orders that required defense counsel to identify themselves and their interest, to limit their inquiries to the condition at issue, and to advise physicians that they need not comply with the request for an interview. We believe that the execution of a valid authorization and the fact that the physician, under HIPAA, is permitted, but not required, to grant the interview will address these concerns in the future" (*id.* at 416 n 6 [citation omitted]).

We reject Tsai's contention that the decision of the Court of Appeals in *Arons* mandates that the admonition must be made only by defense counsel. Preliminarily, it is significant that the

Court neither disturbed nor criticized the Supreme Court's requirement in *Arons* that the admonition, in boldface type, be placed directly on the authorizations themselves. Moreover, on their face, the subject admonitions are unlikely to chill the nonparty treating physicians' decision to agree to an interview, as they are facially neutral: "The purpose of the requested interview with the physician is solely to assist defense counsel at trial. The physician is not obligated to speak with defense counsel prior to trial. The interview is voluntary." Additionally, to the extent the admonition could be deemed to express the plaintiff's preference for noncooperation, such an interpretation is mitigated by the fact that the document itself, an "authorization" from the plaintiff, suggests a preference for cooperation.

The overall tenor of the decision of the Court of Appeals in *Arons* strongly suggests that it is of primary importance for the treating physician (or other health care professional) to be informed that the purpose of the interview is to assist defense counsel during the litigation and that his or her participation is voluntary. Providing such information best ensures that an individual who agrees to be interviewed will not unwittingly disclose privileged information regarding a medical condition not at issue in the litigation. Which party conveys such message and in what manner is of secondary importance. Accordingly, we hold that the method the plaintiffs employed here—placing the admonition directly on the HIPAA-compliant authorizations and highlighting the language—is consistent with *Arons,* as it clearly serves the primary purpose of conveying the information in a manner that best prevents the accidental disclosure of privileged information. While the information could also have been conveyed to the treating physicians by defense counsel, for example, by orally conveying such information prior to the interview or in a written document appended to the plaintiff's authorization, *Arons* does not require only defense counsel to be the messenger of such information.

Therefore, the order is affirmed insofar appealed from.

Mastro, J.P., Miller and Carni, JJ., concur.

Ordered that the order is affirmed insofar as appealed from, with costs.