Sims v Reyes (2021 NY Slip Op 02971)





Sims v Reyes


2021 NY Slip Op 02971


Decided on May 7, 2021


Appellate Division, Fourth Department


Troutman, J., J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on May 7, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: CENTRA, J.P., LINDLEY, NEMOYER, TROUTMAN, AND BANNISTER, JJ.


1240 CA 20-00266

[*1]NICHOLAS SIMS, PLAINTIFF-APPELLANT,
v
SAMUEL A. REYES, M.D., ET AL., DEFENDANTS, AND SETON IMAGING, DEFENDANT-RESPONDENT. (APPEAL NO. 1.) 






LIPSITZ GREEN SCIME CAMBRIA LLP, BUFFALO (JOHN A. COLLINS OF COUNSEL), FOR PLAINTIFF-APPELLANT.
ROACH, BROWN, MCCARTHY & GRUBER, P.C., BUFFALO (MEGHANN N. ROEHL OF COUNSEL), FOR DEFENDANT-RESPONDENT. 


Troutman, J.
 Appeal from an order of the Supreme Court, Erie County (Frederick J. Marshall, J.), entered February 7, 2020. The order, among other things, granted in part the motion of defendant Seton Imaging to compel plaintiff to provide revised HIPAA-compliant authorizations. 
It is hereby ORDERED that the order so appealed from is affirmed without costs.
Opinion by Troutman, J.:
In this medical malpractice action, a dispute arose concerning the specific wording of an authorization provided by plaintiff as required by Arons v Jutkowitz (9 NY3d 393 [2007]). Supreme Court directed plaintiff to provide authorizations containing certain language, and we conclude that the court's ruling did not constitute an abuse of discretion. Accordingly, the order should be affirmed.
Plaintiff commenced this medical malpractice action to recover damages for injuries that he sustained as a result of a failure to diagnose a tumor. Seton Imaging (defendant) demanded authorizations compliant with the Health Insurance Portability and Accountability Act of 1996 ([HIPAA] Pub L 104-191, 110 US Stat 1936) allowing plaintiff's treating physicians to speak with defendant's attorney. In response, plaintiff provided authorizations that included the following language:
"***READ BELOW AND PAGE 2 FOR IMPORTANT INFORMATION***
The attorneys for the defendants in this lawsuit have indicated that they intend to contact you, and will attempt to meet with you to discuss the medical treatment you have provided, and perhaps other issues that relate to a lawsuit I commenced. Although I am required to provide these defense lawyers with a written authorization permitting them to contact you, the law does not obligate you in any way to meet with them or talk to them. That decision is entirely yours. If you decide to meet with their lawyers, I would ask that you let me know, because I would like the opportunity to be present or have my attorneys present."
The foregoing language (see Charlap v Khan, 41 Misc 3d 1070, 1072 [Sup Ct, Erie County 2013, Curran, J.]) was printed in bold and in a typeface larger than that used throughout the rest of the authorization.
Defendant objected to that language, asserting a right to interview plaintiff's treating physicians privately. Plaintiff refused to provide revised authorizations. Defendant offered, as a compromise, to accept revised authorizations that included the following language:
"the purpose of the requested interview with the physician is solely to assist defense counsel at trial. The physician is not obligated to speak with defense counsel prior to trial. The interview is voluntary."
Unable to reach a compromise with plaintiff, defendant moved, inter alia, to compel plaintiff to provide revised authorizations. The court granted the motion in part, directing plaintiff, as relevant here, to provide revised HIPAA-compliant authorizations containing defendant's proposed language, unemphasized and in the same size font as the rest of the authorization. Plaintiff appeals.
The CPLR provides for "full disclosure of all matter material and necessary in the prosecution or defense of an action, regardless of the burden of proof" (CPLR 3101 [a]). Although the statute establishes a right to broad discovery, that right is not unlimited (see Forman v Henkin, 30 NY3d 656, 661-662 [2018]). The Court of Appeals has recognized the importance of protecting parties from " 'unnecessarily onerous application of the discovery statutes' " (id. at 662, quoting Kavanagh v Ogden Allied Maintenance Corp., 92 NY2d 952, 954 [1998]). Relatedly, the Court of Appeals has refused to limit parties to the formal discovery devices enumerated in CPLR article 31 (see Arons, 9 NY3d at 409), identifying ex parte interviews of fact witnesses as "informal discovery of information that [might] serve both the litigants and the entire justice system by uncovering relevant facts, thus promoting the expeditious resolution of disputes" (Niesig v Team I, 76 NY2d 363, 372 [1990]; see Arons, 9 NY3d at 407). Informal discovery may often be more efficient and economical for nonparties, too. For example, in the absence of informal discovery, " '[i]nstead of communicating with an attorney during a 10-minute telephone call, a physician could be required to attend a four-hour deposition or to provide a time-consuming response to detailed and lengthy interrogatories' " (Arons, 9 NY3d at 409, quoting Kish v Graham, 40 AD3d 118, 129 [4th Dept 2007, Pine, J., dissenting], revd 9 NY3d 393 [2007]).
Physicians, of course, cannot freely discuss their patients' medical histories. Since the promulgation of HIPAA's Privacy Rule (45 CFR parts 160, 164), physicians are forbidden by federal law from disclosing protected health information (see Arons, 9 NY3d at 412-413). Thus, in order to facilitate the continued practice of informal discovery with respect to nonparty physicians, the Court of Appeals created a procedural framework for parties to conduct such discovery without running afoul of the Privacy Rule (see id. at 409-411; McCarter v Woods, 106 AD3d 1540, 1541-1542 [4th Dept 2013]). Under that framework, when a plaintiff has affirmatively put his or her medical condition in controversy, he or she must, upon the defendant's request, furnish HIPAA-compliant authorizations permitting plaintiff's treating physicians to speak to defendant's attorney (see Arons, 9 NY3d at 415). The furnishing of such an authorization to the defense is not designed to further the rights of either party to the litigation;[FN1] it is merely a "procedural prerequisite" of an interview with the nonparty physician (id. at 402), who is free to decline the interview (see id. at 416).
Since Arons, few disputes concerning the specific wording of an authorization have made their way to the appellate courts. The relative dearth of appellate litigation may be due in large part to the Office of Court Administration's adoption of a standard form, titled "Authorization to Permit Interview of Treating Physician by Defense Counsel" (https://www.nycourts.gov/forms/hipaa.shtml; see Akalski v Counsell, 29 Misc 3d 936, 939 [Sup Ct, Westchester County 2010], op amended and superseded — Misc 3d — [Oct. 18, 2010]), which would seem to offer a straightforward way for parties to meet this simple procedural [*2]prerequisite. Indeed, the last time a dispute involving the precise wording of an Arons authorization made its way to this Court, we concluded that the court properly directed the parties to use that very form (see Grieco v Kaleida Health, 82 AD3d 1671, 1672 [4th Dept 2011]).
Of course, parties are not required to use this readily available form, nor is the court required to insist upon its use, although that may lead to disputes over the precise wording of the authorizations. When such a dispute arises, its resolution falls comfortably within the court's " 'broad discretion to control discovery,' " and, unless there is a clear abuse of that discretion, we will not disturb the court's ruling (Voss v Duchmann, 129 AD3d 1697, 1698 [4th Dept 2015]; see Forman, 30 NY3d at 662; Lisa I. v Manikas, 183 AD3d 1096, 1097 [3d Dept 2020]; Hann v Black, 96 AD3d 1503, 1504 [4th Dept 2012]). Here, the wording that was approved by the court is identical to the wording that previously met with the approval of the Second Department in Porcelli v Northern Westchester Hosp. Ctr. (65 AD3d 176, 178 [2d Dept 2009]), it is similar to the language contained in the standard form, and there is no dispute that it is consistent with the applicable law. Thus, we cannot say that the court clearly abused its broad discretion in granting that part of the motion seeking to compel plaintiff to provide revised authorizations (see Voss, 129 AD3d at 1698; Grieco, 82 AD3d at 1672).
All concur except Bannister, J., who dissents and votes to modify in accordance with the following opinion: I respectfully dissent. In my view, the language at issue in plaintiff's HIPAA-compliant authorizations, which requested that his treating physicians inform plaintiff if they chose to speak with the attorney representing Seton Imaging (defendant), was in no way improper, illegal, or misleading. Therefore, I conclude that Supreme Court abused its discretion in granting that part of defendant's motion seeking to compel plaintiff to provide revised authorizations.
The contested wording in the authorization advises the physicians that "[i]f you decide to meet with [defendant's] lawyers, I would ask that you let me know, because I would like the opportunity to be present or have my attorneys present." Defendant objected to that language, arguing that it interfered with its right to interview plaintiff's treating physicians privately. My colleagues and I agree that defendant does not have a right to a private interview with plaintiff's treating physicians. To the extent that defendant relies on Arons v Jutkowitz (9 NY3d 393 [2007]) for the creation of that right, I agree with my colleagues that defendant is mistaken. In Arons, the Court of Appeals held that, in order to facilitate informal discovery, which offers "considerable advantages" (id. at 410), trial courts can compel plaintiffs to provide HIPAA authorizations permitting their treating physicians to discuss the medical conditions at issue in the litigation with a defendant's attorney (see id. at 415). Nevertheless, the Court recognized that ex parte interviews with nonparty witnesses are informal discovery measures and that a physician's participation in such an interview is entirely voluntary and cannot be compelled (see id. at 410, 416). Thus, Arons plainly did not confer on a defendant's attorney a right to meet privately with a plaintiff's physicians.
The particular language at issue in this case simply requests, and does not require, that the physician inform plaintiff if the physician chooses to participate in the informal interview with defendant's attorney so that plaintiff, or his attorneys, can have an opportunity to be present. In my view, that language cannot be viewed as a condition on the informal discovery; rather, it is simply a request that the physician is free to accept or reject (cf. Rivera v Lutheran Med. Ctr., 22 Misc 3d 178, 185-186 [Sup Ct, Kings County 2008], affd 73 AD3d 891 [2d Dept 2010]). In other words, plaintiff is not insisting that his attorneys be present for any interview, and it is clear from the language used that the decision whether to inform plaintiff of his or her cooperation remains with the physician (see Miller v Kingston Diagnostic Ctr., 33 Misc 3d 496, 498-499 [Sup Ct, Ulster County 2011]). In my view, including that request in an authorization would in no way negate the permission given in the HIPAA authorization or make the physician any less inclined to agree to the informal interview.
Despite the fact that the language is not improper, illegal, or misleading and despite the fact that defendant failed to present any other basis which prevents plaintiff from asking his physicians to inform him if they decide to speak with defendant's attorney, my colleagues conclude that the court did not abuse its discretion because defendant's proposed language was approved by the Second Department in Porcelli v Northern Westchester Hosp. Ctr. (65 AD3d 176 [2d Dept 2009]). While that language may have been accepted in Porcelli, nothing in that [*3]case can be relied on for authority to compel plaintiff to remove the language at issue in our case. Rather, the Porcelli court recognized that providing information on the HIPAA authorizations to the physician is consistent with the goal of "ensur[ing] that [the physician] who agrees to be interviewed will not unwittingly disclose privileged information regarding a medical condition not at issue in the litigation" (id. at 185). The opportunity for plaintiff or his attorneys to be present during defendant's informal discovery interview of plaintiff's treating physician would similarly ensure that privileged or confidential information is not disclosed (see generally Arons, 9 NY3d at 408).
In my view, the language in plaintiff's original authorization in this case was not improper. It did not, for example, advise the physician to do anything improper or "express a preference that the witness not meet with the adversary," (Charlap v Khan, 41 Misc 3d 1070, 1085 [Sup Ct, Erie County 2013]). Thus, I conclude that the court abused its discretion in granting the motion to the extent that it sought to compel plaintiff to provide a revised HIPAA-compliant authorization, and I would modify the order accordingly.
Entered: May 7, 2021
Mark W. Bennett
Clerk of the Court



Footnotes

Footnote 1: The assertion by defendant of a right to a private interview with plaintiff's treating physicians, outside the presence of plaintiff's attorney, is inconsistent with Arons, which explicitly states that the physician may decline defendant's request for an interview and does not explicitly or implicitly bar the presence of plaintiff's attorney at such an interview (see 9 NY3d at 409-416). Defendant concedes that the physician is free to have his or her own attorney present for the interview or to decline the interview outright. If defendant's attorney and the physician are unable to agree on the terms of the interview, it need not take place.