OPINION OF THE COURT
John M. Curran, J.
Defendants, Mercy Hospital of Buffalo (Mercy) and Catholic Health System, Inc., have moved by order to show cause for an order “compelling plaintiff to send correspondence to decedent’s nonparty health care providers retracting his request to be present during defense counsel’s private interviews.” Defendants, Mateen Khan, M.D. and Buffalo Emergency Associates, LLP have moved by order to show cause for an order “compelling plaintiff to send letters to non-party health care providers retracting his objectionable request to be present, or for his attorney to be present, during defendants’ private interviews, which defendants have a right to conduct, without interference, pursuant to Arons v Jutkowitz.”[1]
Background
This medical malpractice action was commenced in November of 2009. The action arises out of the medical treatment rendered to plaintiffs decedent, Lisa Charlap, in the emergency room department at Mercy on July 21, 2007. Plaintiff asserts causes of action for negligence and wrongful death, alleging that defendants were negligent in failing to properly diagnose and appropriately treat the decedent, resulting in her death on November 10, 2007.
Defendants have requested HIPAA-compliant[2] Arons “speaking authorizations” permitting their attorneys to speak with decedent’s nonparty health care providers. Defendants have come into possession of correspondence from the plaintiff, Vic *1072 tor Charlap, addressed to one of decedent’s treating physicians. The letter from plaintiff dated August 13, 2013, states:
“I am writing to you regarding a lawsuit that has been commenced on behalf of my late wife, Lisa Charlap, which is listed above. The attorneys for the defendants in this lawsuit have indicated that they intend to contact you, and will attempt to meet with you to discuss the medical treatment you have provided, and perhaps other issues that relate to this lawsuit.
“Although I am required to provide these defense lawyers with a written authorization permitting them to contact you, the law does not obligate you in any way to meet with them or talk with them. That decision is entirely yours. If you decide to meet with their lawyers, I would ask that you let me know, because I would like the opportunity to be present or to have my attorneys present.” (Defendants’ supporting offs, exhibits F, E.)
Defendants argue that they have a right to privately interview decedent’s treating physicians and that the letter from plaintiff interferes with this right. According to defendants, because the letter was an improper interference with their rights, the court should fashion a remedy by ordering plaintiff to send correspondence to decedent’s nonparty health care providers retracting his request to be present during defense counsel’s private interviews of those health care providers. The trial is scheduled to commence in late October of this year.
Analysis
The subject of private interviews of personal injury plaintiffs’ treating physicians by defense counsel has a lengthy history (see Molly Klapper, Outside Counsel, Chipping Away at “Anker” Doctrine, NYLJ, Sept. 18, 1996 at 22, col 4; Patrick M. Connors, New York Practice, Appellate Division is Confronted with HIPAA, NYLJ, Jan. 17, 2007 at 4, col 4). This court has summarized the early cases on this subject as standing “for the proposition that a defense counsel’s desire to informally interview a plaintiffs treating physician is not authorized by any statute or rule and therefore the courts do not involve themselves” (Holzle v Healthcare Servs. Group, Inc., 7 Misc 3d 1027[A], 2005 NY Slip Op 50770[U], *4 [Sup Ct, Niagara County 2005]). This court also observed that the Appellate Division later limited the earlier cases by holding “that there is no ethical or other legal *1073 prohibition against interviewing plaintiffs treating physicians in personal injury actions when the interviews occur after the note of issue has been filed” but that “none of these cases required a plaintiff to consent to the interviews” (Holzle, 2005 NY Slip Op 50770EU], *4).
After HIPAA and its Privacy Rule[3] were implemented in 2002, a practical problem arose for defense counsel seeking post-note of issue interviews because physicians insisted on an authorization or a court order permitting the oral communication under HIPAA CHolzle, 2005 NY Slip Op 50770[U], *5). The trial courts devised “widely varying approaches” in addressing this practical problem (Thomas A. Moore & Matthew Gaier, Medical Malpractice, Recent Cases on Ex Parte Interviews With Treating Physicians, NYLJ, Oct. 4, 2005 at 17, col 3).
In Holzle, this court concluded that a plaintiffs privacy rights under HIPAA should be deemed waived just as the Court of Appeals deemed the physician-patient privilege waived in Koump v Smith (25 NY2d 287, 294 [1969]). While imperfect,[4] this court adopted an approach which was consistent with existing Appellate Division authority and avoided requiring post-note of issue authorizations or court orders not authorized by statute or rule. This court perceived that such a resolution of the issue also maintained
“a wise policy of non-involvement in activities which are not formal disclosure authorized by the CPLR or the Uniform Rules. The courts should not become involved in post-note of issue trial preparation matters and should not dictate to plaintiffs or defense counsel the terms under which interviews with non-party witnesses may be conducted.” (Holzle, 2005 NY Slip Op 50770[U], *8.)
In Arons, the Court of Appeals held that an attorney may privately interview an adverse party’s treating physician when the adverse party has affirmatively placed his or her medical condition in controversy. The Court observed that “there are no statutes and no rules expressly authorizing — or forbidding — ex parte discussions with any nonparty” and that its “decisions plainly permit informal discovery” (9 NY3d at 409 and n 1).
*1074 The Court also addressed plaintiffs’ concern “that in a more casual setting and without opposing counsel present, a physician might unwittingly divulge medical information as to which the privilege had not been waived, or might be gulled into making an improper disclosure” (9 NY3d at 410). The Court drew from its decisions in Niesig v Team I (76 NY2d 363 [1990]) and Muriel Siebert & Co., Inc. v Intuit Inc. (8 NY3d 506 [2007]) to assume “that attorneys would make their identity and interest known to interviewees and comport themselves ethically” (Niesig, 76 NY2d at 376). On this basis, and consistent with Code of Professional Responsibility DR 7-104 (a) (2) (22 NYCRR former 1200.35 [a] [2]), the Court in Arons stated: “[A]n attorney who approaches a nonparty treating physician (or other health care professional) must simply reveal the client’s identity and interest, and make clear that any discussion with counsel is entirely voluntary and limited in scope to the particular medical condition at issue in the litigation.” (9 NY3d at 410.)
Finally, the Court in Arons addressed the practical problem raised by defense counsel that health care providers might not meet with them because of the Privacy Rule in HIPAA. Although the Court concluded that the Privacy Rule did not prevent the informal discovery involving defense interviews of plaintiffs’ treating physicians, the rule did superimpose certain procedural prerequisites. The Court recognized that “as a practical matter,” the Privacy Rule requires the attorney who wishes to contact the adverse party’s treating physician to obtain a valid HIPAA authorization or a court or administrative order (9 NY3d at 415). The Court found that it was proper for the trial courts to order plaintiffs to provide the HIPAA-compliant authorizations permitting their treating physicians to discuss the medical condition at issue with defense counsel. Nevertheless, the Court found that “it bears repeating that the treating physicians remain entirely free to decide whether or not to cooperate with defense counsel” and that the “HIPAA-compliant authorizations and HIPAA court orders cannot force a health care professional to communicate with anyone” (9 NY3d at 416).
The Court of Appeals in Arons drew heavily from its decisions in Niesig and Siebert. The Arons court quoted directly from Niesig in recognizing the value of “informal discovery” including informal interviews of potential witnesses. In Niesig, the Court of Appeals cited favorably to the Second Circuit’s decision in International Bus. Machs. Corp. v Edelstein (526 F2d 37 *1075 [1975]). There, the Second Circuit vacated the trial court’s order which precluded IBM from privately interviewing adverse witnesses. The Second Circuit discussed the value of informal pretrial interviews with prospective witnesses as opposed to depositions (526 F2d at 41). The court concluded that the restrictions on interviews set by the trial judge were beyond his authority because
“[t]hey not only impair the constitutional right to effective assistance of counsel but are contrary to time-honored and decision-honored principles, namely, that counsel for all parties have a right to interview an adverse party’s witnesses (the witness willing) in private, without the presence or consent of opposing counsel and without a transcript being made” (526 F2d at 42).
Significantly, and unlike the language from the Second Circuit which was quoted in Niesig and referenced in Arons, the Arons court did not hold that there was a constitutional or other legally enforceable right to privately interview nonparty treating physicians. Rather, in Niesig, the Court of Appeals narrowed the ethical prohibition against private interviews by attorneys of corporate employees of the adverse party but did not do so in terms of an interview being a “right” enforceable by law. The same is true for Siebert which prescribed ethical guidance for lawyers seeking to interview a former officer of the adverse party corporation but made no declaration of any “right” to an informal interview. Similarly, the Arons court held only that there are no statutes or rules authorizing or forbidding ex parte discussions with nonparties, and made no mention of any “right” to such communication.
The Court of Appeals in Arons also appears to have rejected the reasoning of those cases mentioned above holding that interviews were permissible but only after the note of issue was filed. The Court observed that those previous lower court decisions were “at decided odds with our reasoning” in more recent decisions (9 NY3d at 411). Accordingly, private interviews of nonparty treating physicians apparently may be conducted at any time after the litigation is commenced.
The only limitation placed upon private interviews of an adverse party’s treating physicians was rooted by the Arons court in the ethical constraints placed upon attorneys under the *1076 then Code of Professional Responsibility (Code).[5] According to Arons, an attorney who approaches a nonparty physician must reveal the client’s identity and interest, and make clear that any discussion with counsel is entirely voluntary and limited to the medical condition at issue in the litigation (9 NY3d at 410).
Defendants have called to the court’s attention a decision by the Supreme Court in Ulster County (Kleeschulte v Blair, 20 Misc 3d 1114[A], 2008 NY Slip Op 51344[U] [Sup Ct, Ulster County 2008]). There, defendants moved for sanctions and related relief based on two critical facts: (1) defense counsel scheduled an interview with one of the plaintiffs treating physicians and, at that appointment, plaintiffs counsel arrived and informed defense counsel of her intention to sit in on the interview, resulting in the defense counsel declining to go forward with it; and (2) a letter which defense counsel subsequently obtained addressed to plaintiff’s treating physician which read in pertinent part as follows:
“As if physicians are not busy enough, New York State’s highest Court has recently determined that physicians should take time out of their day and speak with attorneys who are defending cases.
“My office is obligated to supply them with an authorization permitting them an opportunity to speak with you about the care and treatment that you gave to your patient and my client. Please be advised that you are not required by law to have this conversation or meeting. Simply, I must supply the defense counsel with authorizations permitting them the opportunity. The choice is yours. However, as an advocate for my client and your patient, I am respectfully requesting that if you do decide to have a conversation or interview with defense counsel, that you please notify me of the date and time and I will make myself available to sit in as well.
“If this causes undue hardship, kindly advise.” (Kleeschulte, 2008 NY Slip Op 51344[U], *2.)
Supreme Court agreed with defendants “that they are entitled to privately interview plaintiff’s treating physicians, without *1077 interference from plaintiff’s counsel.” Further, the court concluded that the letter sent by plaintiffs counsel and her appearance at the interview “unduly interfered with defendants’ rights under Arons” (Kleeschulte, 2008 NY Slip Op 51344[U], *3). On this basis, the court allowed defendants a further opportunity to conduct private interviews with the treating physicians free of any interference of plaintiffs counsel and directed the payment of fees.
Defendants also cite Peluso v C.R. Bard, Inc. (2010 NY Slip Op 32595 [U] [Sup Ct, NY County 2010]) for the proposition that a plaintiff has no right to insist that his or her attorney be present at any interview with a nonparty health care provider. However, Peluso is not supportive of defendants’ fundamental point that they have a “right” to privately interview plaintiffs’ nonparty treating physicians. Peluso involved a motion for sanctions and fees against plaintiffs’ counsel who had written to plaintiffs’ treating physicians setting forth:
“the defendants’ attorneys have requested permission to speak with [the physician]; [the physician]’s participation with regard to such an interview is entirely voluntary and he has the right to decline the request; If [the physician] goes forward with the interview, the patient objects to any private meetings; the patient ‘insists on the strict maintenance of the right to confidentiality of his medical information by the physician as required by the federal HIPAA law, and will hold [the physician] accountable for any breach of this duty’; and should [the physician] voluntarily agree to such an interview, plaintiffs’ attorney asks that [the physician] tell defendants’ attorneys that he would like to have plaintiffs’ counsel present during the interview to ‘make certain that the interview does not intrude into any protected or privileged information.’ ” (Peluso, 2010 NY Slip Op 32595[U], *2-3.)
One of the plaintiffs’ treating physicians communicated with the defendants indicating that he had spoken to the plaintiffs’ attorney and that the physician would honor the patient’s request that he not speak with the defendants’ attorneys regarding the case.
The court in Peluso stated: “[t]he decision in Arons does not give defendants an unfettered right to an ex parte interview with a non-party treating physician.” The court explained that “Arons did not establish that an ex parte interview is manda *1078 tory” and that Arons “only reaffirmed defendants’ right to seek an ex parte interview.” The court observed that the letter from plaintiffs’ counsel was “confusing and misleading,” as some of its language could prompt a physician to believe that the patient had withdrawn his authorization for the interview. The court also stated that “plaintiffs have no basis to insist that their attorney must be present at any interview” but that the letter to the physicians did not interfere with the defendants’ “rights under Arons.” {Peluso, 2010 NY Slip Op 32595[U], *5.) Rather, the court concluded that the letter largely recited the contents of a properly issued “Arons authorization” and that “[t]he physician is as free to disregard this letter as much as the physician is free to disregard defense counsel’s request for an interview.” On this basis, the court denied the motion for sanctions. {Peluso, 2010 NY Slip Op 32595[U], *6.)
Plaintiff has cited Miller v Kingston Diagnostic Ctr. (33 Misc 3d 496 [Sup Ct, Ulster County 2011]), which was not cited by defendants. There, defendants moved for an order compelling plaintiff to send a letter to one of plaintiffs decedent’s treating physicians retracting any objectionable letters previously sent by plaintiff and/or withdrawing or correcting any such language regarding plaintiff’s Arons authorization. Plaintiff’s counsel furnished Arons authorizations to defense counsel but also forwarded to defense counsel a copy of a letter to one of the treating physicians. The pertinent part of the letter is:
“Enclosed please find copy of the ‘Aron’s’ authorization, executed by Harold G. Miller, on behalf of the Estate of Dorothy Miller which the court has directed we provide to defense counsel. This authorization permits the defense attorney an opportunity to speak with you regarding the care and treatment you rendered to Ms. Miller, relative to the incident in question.
“The Courts are clear that it is up to the treating physician to make a decision as to if, when and where to meet. The Court also clearly permits a doctor to charge whatever is reasonable and necessary for such meeting to compensate the doctor for his lost time.
“As the attorney representing the plaintiff, I am requesting the right to be present when you speak with defense counsel.
“I assure you and defense counsel that I will not *1079 speak, comment or in any way interfere with your conversation.
“Ultimately, the decision to meet with a defendant’s attorney, with or without the presence of the plaintiffs counsel, is completely up to you. You are not under any obligation to meet with the defense attorney or to allow me to be present if you decide to meet with the defense attorney.
“By copy of this letter to defense counsel, I am putting them on notice of my request that I will await notification, if any, from your office should you determine to permit me to be present if you decide to speak with defense counsel.” (33 Mise 3d at 497-498.)
Defendants argued that plaintiff cannot take any steps to interfere with private interviews with treating physicians. The court in Miller found that the letter was distinguishable from counsel’s letter in Kleeschulte because “the letter from plaintiffs counsel is not threatening or intimidating” (33 Mise 3d at 498). Further, the letter was made on notice to defendants’ counsel. Finally, the court concluded that “defendants have failed to demonstrate that the Arons decision precludes such a request [by plaintiffs counsel], particularly in a case such as this where plaintiffs letter makes clear that plaintiffs counsel has no right to be present at such interview and counsel is not insisting that it be present” (33 Misc 3d at 498-499). For these reasons, the court held that the letter did not interfere with defense counsel’s “right to ask for an ex parte interview” with the physician (33 Misc 3d at 499).
This court respectfully disagrees with the language of these decisions which suggests that Arons created a “right” to private interviews with treating physicians. The Arons decision does not hold that there is a “right” to the interviews, but only to the execution and delivery of the HIPAA-compliant “speaking authorizations. ’ ’
The first paragraph of the Arons decision states that an attorney “may” interview the plaintiffs’ treating physicians. Near the end of the decision, the Arons court noted that “it bears repeating” that treating physicians “remain entirely free to decide” whether interviews will be allowed, and neither HIPAAcompliant authorizations nor court orders can “force a health care professional to communicate with anyone” (9 NY3d at 416). Because the nonparty witness controls whether the *1080 informal interview will occur and under what circumstances it will be conducted, any “right” to the interview would be unenforceable and therefore nonexistent under law.
The most salient language of Arons demonstrates that the Court of Appeals did not create a “right” to the interviews. The Court carefully noted that “[attorneys have always sought to talk with nonparties who are potential witnesses as part of their trial preparation” (9 NY3d at 409) and that article 31 does not foreclose these “avenues of informal discovery” (9 NY3d at 409, quoting Niesig, 76 NY2d at 372). The Arons court also noted that “the prohibition of interviews in lieu of article 31 discovery devices” as held by lower courts was “at decided odds” with the Court’s reasoning in its later decisions (9 NY3d at 411). With these words, the Arons court was clearly leaving so-called “informal discovery” in the hands of the attorneys and outside the realm of disclosure to be supervised by the courts under article 31. Such “informal discovery” is limited only by the ingenuity and diligence of the bar, within the bounds of professional ethics.
The concept of a “right” in this context carries with it the obligation of the courts to enforce it. A “right”
“is a correlative to duty; where there is no duty there can be no right. But the converse is not necessarily true. There may be duties without rights. In order for a duty to create a right, it must be a duty to act or forbear. . . . It is only to acts and forbearances that others have a right.” (John Chipman Gray, The Nature and Sources of the Law 8-9 [2d ed 1921], as quoted in Black’s Law Dictionary [9th ed 2009], right [online version].)
Arons did not establish a common-law right to conduct a private interview of a nonparty witness. To insist that plaintiffs counsel not request of a witness to be present at defense counsel’s interview is to assert that a plaintiff has a duty to forbear from doing so. Arons did not impose any such duty. Further, any insistence that plaintiffs counsel has such a duty is the equivalent of demanding that plaintiffs counsel forbear from representing his or her client with “competence” (rule 1.1) and “diligence” (rule 1.3), as required by the Rules. The assertion of one person’s legal right in a court of law should be understood in the adversarial process as ordinarily limiting the rights of the adverse party or imposing a duty thereon. Arons did no such thing in merely indicating that an attorney “may” conduct interviews.
*1081 For these reasons, this court concludes that Arons did not create a “right” to conduct private interviews of nonparty witnesses.[6] The absence of such a “right” does not, however, mean that the process of nonparty witnesses being interviewed by attorneys is without boundaries.
As demonstrated by Niesig and Siebert, upon which the Arons court relied, the most important of these boundaries are found in the Rules. By focusing on the boundaries imposed by the Rules, the use of the word “may” by the Arons court comes into focus. Just as the Court in Niesig and Siebert prescribed the limits of DR 7-104, the Arons court delineated the ethical boundaries for defense counsel when interacting with plaintiffs’ nonparty treating physicians.
The question is not whether Arons created a “right” to private interviews but whether attorneys “may” ethically do so and under what constraints. The Court of Appeals’ answer is that an attorney “may” conduct such interviews, just as they “may” conduct many other forms of “informal discovery,” provided the attorney complies with the Rules with respect to treating physicians (at a minimum). An attorney must reveal the attorney’s identity and interest, make clear the interview is voluntary, and limit the interview to the medical condition at issue. The Court’s direction in this regard is consistent with DR 7-104, which has been essentially carried over into rule 4.3.
One of the leading commentaries on the Rules has recognized the commonality of approach taken by the Court of Appeals in Niesig, Seibert and Arons (Patrick M. Connors, New York Practice, The Desert Island Disciplinary Rule, NYLJ, June 23, 2008 [online version]).[7] Consistent with this approach, this court is seeking to have the issue presented on these motions decided on the basis of fundamental principles. Those principles are rooted in the Rules, not in a perceived judicially-created “right.”
The specific portions of the Rules which may serve as boundaries restricting the conduct of attorneys when communicating with plaintiffs’ treating physicians include rules 3.3 (Conduct Before a Tribunal), 3.4 (Fairness to Opposing Party and *1082 Counsel), 4.1 (Truthfulness in Statements to Others), 4.3 (Communicating with Unrepresented Persons) and 8.4 (Misconduct). Rule 3.3 requires a lawyer representing a client before a tribunal to remediate fraudulent conduct related to the proceedings. Comment (12) to rule 3.3 (b) defines such conduct as including “bribing, intimidating or otherwise unlawfully communicating with a witness.” Rule 3.4 prohibits lawyers from suppressing evidence which the lawyer or client has a legal obligation to reveal, and prohibits a lawyer from advising or causing a person “to hide or leave the jurisdiction of a tribunal for the purpose of making the person unavailable as a witness therein” (rule 3.4 [a] [1], [2]). Rule 4.1 mandates that a lawyer not “knowingly make a false statement of fact or law to a third person.” Rule 8.4 (d) precludes a lawyer from engaging in conduct “that is prejudicial to the administration of justice.”
Rule 4.3 is the most relevant to the pending motions because the letter from plaintiff was sent to a presumably unrepresented nonparty treating physician. It provides that a lawyer shall not state or imply to an unrepresented person that the lawyer is disinterested, and the lawyer must act to correct any misunderstanding in this regard. Rule 8.4 (a) also is directly applicable here because, at oral argument, plaintiff’s counsel admitted that his law firm wrote the letter for plaintiff. Rule 8.4 (a) prohibits a lawyer from engaging in unprofessional conduct through the acts of another or by knowingly inducing another to do so.
There are a number of New York ethics opinions which are pertinent to communications with nonparty witnesses. The most helpful was issued in 2009 by the Association of the Bar of the City of New York (NY City Bar Assn Comm on Prof Ethics Formal Op 2009-5 [2009]). The question addressed in that opinion was whether a lawyer may ask a witness who has not been subpoenaed and was not otherwise under court process to refrain from voluntarily providing information to other parties to the litigation. The Committee on Professional and Judicial Ethics (Committee) answered this question in the affirmative. The Committee found that a lawyer making such a request to a nonparty witness “does not flout any court’s authority” and that, in the absence of any rule prohibiting the conduct, “lawyers may feel constrained to make such requests in furtherance of the interests of their clients.” The Committee further recognized: “[i]n our adversary system, all parties to a litigated dispute are granted equal access to sources of proof’ and that “witnesses do not belong to a plaintiff or defendant.”
*1083 In analyzing the issue, the Committee noted that there had been a proposed rule which would have prohibited lawyers from asking “a person other than a client to refrain from voluntarily giving relevant information to another party.” The Committee observed that this rule was rejected by the Appellate Division even though it was consistent with the American Bar Association’s Model Rules of Professional Conduct and the Restatement (Third) of the Law Governing Lawyers. While the Committee did not know why the Appellate Division declined to adopt that proposed rule, the Committee viewed “the omission as a factor reinforcing our conclusion that it would be inappropriate to imply a restriction nowhere found on the face of the Rule, as approved.”
The Committee specifically discussed both Niesig and Arons. The Committee concluded, however, that “authorization of informal discovery under specified circumstances through witness interviews is not tantamount to an ethical rule prohibiting lawyers from asking unrepresented witnesses to voluntarily decline to provide information to an adversary.” The Committee observed that “[jJudicial sanction of informal discovery does not, by itself, overcome the express language and history of the Rule” and found that the administration of justice would not be prejudiced by a lawyer’s request that a nonparty witness refrain from communicating voluntarily with the lawyer’s adversary.
The Committee cautioned lawyers to comply with rule 3.4 (a) and (b) and warned lawyers not to engage in the conduct referenced in Comment (12) to rule 3.3 prohibiting lawyers from “bribing, intimidating or otherwise unlawfully communicating with a witness.”[8] The Committee found no violation of rule 4.3 so long as the lawyer limited the advice to giving “certain non-controvertible information about the law to enable the other party to understand the need for independent counsel.” Finally, the Committee decided that the Rules do not prohibit a lawyer from asking an unrepresented witness to notify her in the event that the witness is contacted by the lawyer’s adversary so long as the lawyer does not suggest that the witness is required to comply with this request.
Opinion 2009-5 is highly persuasive because it was rendered by one of the leading professional ethics committees in New *1084 York State and addresses all of the ethical concerns which this court believes are presented on these motions. Other ethics opinions issued by the New York State Bar Association touch on this issue as well and support the theoretical underpinnings of the New York City Bar Association’s analysis (see NY St Bar Assn Comm on Prof Ethics Op 245 [1972] [it is not improper for defense counsel in a criminal case to interview a witness for the prosecution over the objection of the district attorney]; NY St Bar Assn Comm on Prof Ethics Op 402 [1975] [it is not improper to employ an investigator to befriend key prosecution witnesses to ascertain truthfulness of testimony]; NY St Bar Assn Comm on Prof Ethics Op 463 [1977] [a lawyer for respondent in paternity proceeding may obtain a statement from the mother of an illegitimate child under certain circumstances]; NY St Bar Assn Comm on Prof Ethics Op 577 [1986] [it is not improper to communicate with an expert witness retained by an adversary without knowledge or consent of the opposing counsel]). Specifically, New York State Bar Association Committee on Professional Ethics Opinion 245 (1972) observes: “A lawyer may properly interview any witness or prospective witness for the opposing side in any civil or criminal action without the consent of the opposing counsel or party, as a witness does not ‘belong’ to any party.”
New York State Bar Association Committee on Professional Ethics Opinion 245 (1972) refers to the Code of Trial Conduct issued by the American College of Trial Lawyers. The current version of the Code of Pretrial and Trial Conduct (ACTL Code) provides as follows:
“Communicating with Nonparty Fact Witnesses . . .
“(b) In dealing with a nonparty who is a fact witness or a potential fact witness, a lawyer must:
“(1) disclose the lawyer’s interest or role in the pending matter and avoid misleading the witness about the lawyer’s purpose or interest in the communication;
“(2) be truthful about the material facts and the applicable law;
“(3) if the nonparty has no counsel, correct any misunderstanding expressed by the nonparty;
“(4) treat the nonparty courteously; and
“(5) avoid unnecessarily embarrassing, inconveniencing or burdening the nonparty.”
The ACTL Code states in section 7 (e) that “[a] lawyer should not obstruct another party’s access to a nonparty fact witness.” *1085 The ACTL Code does not address the obligation of an attorney who may feel compelled to make a request to a nonparty witness not to discuss a matter with the adversary as recognized in Opinion 2009-5. As noted in that opinion, to impose that requirement on lawyers to forbear from making such a request in the absence of a specific rule creates an ethical obligation of an attorney which may be counter to the requirement of “diligence” and “competence.” To create such a duty to forbear from acting, particularly when a proposed rule to that effect was rejected by the Appellate Division, would appear to be inappropriate policymaking by a court.
The court concludes that the letter which is the subject of these motions does not cross the boundaries set by the Rules. The letter does not advise the witness to do anything improper under the Rules. It does not even express a preference that the witness not meet with the adversary, which in any event would be permissible under Opinion 2009-5. Rather, at most, it is a request to be present during an interview, a request which may or may not be honored by the witness. For these reasons, the court denies the motions but declines to opine at this time as to whether the letter may be used for credibility purposes during cross-examination of the plaintiff (see e.g. David B. Harrison, Annotation, Admissibility and Effect, on Issue of Party’s Credibility or Merits of His Case, of Evidence of Attempts to Intimidate or Influence Witness in Civil Action, 4 ALR4th 829).

. 9 NY3d 393 (2007).

. Health Insurance Portability and Accountability Act of 1996 (Pub L 104-191, 110 US Stat 1936 [1996]).

. 45 CFR parts 160, 164, subparts A, E.

. One article states that Holzle “seem[s] inconsistent with the federal regulations” and would “leave defense counsel complaining that doctors are still refusing to speak with them” (Moore & Gaier, Medical Malpractice, Recent Cases on Ex Parte Interviews With Treating Physicians).

. The Code was replaced in April of 2009 by the Rules of Professional Conduct (Rules) (22 NYCRR 1200.0). The Rules and the Code with respect to communicating with unrepresented persons are largely the same, although the Rules expanded some of the responsibilities imposed upon attorneys (efi DR 7-104 [a] [2] [22 NYCRR former 1200.35 (a) (2)]; Rules [22 NYCRR 1200.00] rule 4.3).

. This conclusion is conceptually consistent with the Fourth Department’s decision in McCarter v Woods (106 AD3d 1540, 1541 [4th Dept 2013]), which declined to extend Arons because it was “narrow in scope.”

. Professor Connors also observed that an attorney’s failure to comply with the Code (now the Rules) when communicating with unrepresented persons may prohibit use of the information improperly obtained or even result in the disqualification of counsel.

. At oral argument, a suggestion was made that perhaps the letter from plaintiff bordered on “tampering with a witness.” If that were true, and it is not here, the Penal Law might be implicated (Penal Law, art 215, § 215.10 [tampering with a witness in the fourth degree, class A misdemeanor]).